IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY,<br>            Plaintiff,<br><br>VS.<br><br><br>ADAM MICHAEL CUSTOM HOMES, LLC ANNA ORAN AND KEVIN PFISTER<br>            Defendants. | §<br>§<br>§<br>§<br>§<br>§  Civil Action No.: 5:23-cv-426<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY RELIEF

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY ("CSU" or the "Plaintiff"), Plaintiff in the above-entitled and numbered cause, and petitions this Court pursuant to the FEDERAL DECLARATORY JUDGMENT ACT, 28 U.S.C. §§2201 *et seq.* and Rule 57 of the FEDERAL RULES OF CIVIL PROCEDURE for consideration and a declaration of the parties' respective rights and/or obligations under a commercial general liability insurance policy issued by CSU to the named insured and Defendant, Adam Michael Custom Homes, LLC ("AMCH" or the "Insured"). Specifically, CSU seeks a declaratory judgment with respect to its obligation to defend and/or indemnify AMCH, in connection with a pending arbitration entitled: Case No. 01-22-003-1021, *Anna Oran and Kevin Pfister v. Adam Michael Custom Homes, LLC*, filed with the American Arbitration Association (the "Underlying Arbitration" or "Arbitration"). The Arbitration stems from construction defect allegations resulting from the work performed by AMCH at Anna Oran and Kevin Pfister's home, located at 97 Coleman Springs, Boerne, Texas 78006 (the "Property"). In support of CSU's Original Complaint for Declaratory Relief, CSU

would respectfully show the Court as follows:

## I.
## PARTIES

1.  Plaintiff CSU is a foreign insurance company duly organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Ohio, and doing business in the State of Texas. CSU is a citizen of the State of Ohio.

2.  Defendant, AMCH is a domestic limited liability company organized and existing under the laws of the State of Texas. AMCH may be served by delivering service to its registered agent, John R. Lane, Jr., at 8526 N. Braunfels, San Antonio, Texas 78217, or wherever else he may be found.

3.  Defendant, Anna Oran ("Oran") is an individual residing in Kendall County, Texas. Upon information and belief, Oran is a citizen of the State of Texas. Oran may be served at her residence located at 97 Coleman Springs, Boerne, Texas 78006 or wherever else she may be found.

4.  Defendant, Kevin Pfister ("Pfister") is an individual residing in Kendall County, Texas. Upon information and belief, Oran is a citizen of the State of Texas. Pfister may be served at his residence located at 97 Coleman Springs, Boerne, Texas 78006 or wherever else he may be found.

## II.
## JURISDICTION AND VENUE

5.  This declaratory judgment action is brought under 28 U.S.C., §§ 2201 *et seq.* and Rule 57 of the FEDERAL RULES OF CIVIL PROCEDURE, for the purpose of determining a question of actual controversy between the parties, as hereinafter more fully set forth. The jurisdiction of this Court is proper under 28 U.S.C. § 1332, based upon the diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeds the sum of $75,000.00,

exclusive of interest and costs. The damages at issue in the Underlying Arbitration are between $300,000 to $500,000.

6. Venue is properly maintained in this Court pursuant to 28 U.S.C. § 1391(b)(1)(2), as the judicial district is where some of the named Defendants reside, where the Property that is the subject of this suit is located, and where a substantial part of the events giving rise to this action for declaratory relief occurred.

## III.
## FACTUAL BACKGROUND AND THE UNDERLYING ARBITRATION

7. On or around July 19, 2022, Oran and Pfister filed Claimants' Original Statement of Claims ("Statement of Claims") along with a Demand for Arbitration with the American Arbitration Association. Oran and Pfister alleged damages stemming from the construction work performed by AMCH to their Property. They asserted claims of breach of contract, negligence, breach of express and implied warranties, and violations of the Deceptive Trade Practices Act against AMCH. They seek monetary relief between $300,000 and $500,000, as well as damages for mental anguish, treble damages, attorneys' fees, arbitration costs, and prejudgment and post judgment interest. A copy of the Statement of Claims is attached hereto as **Exhibit A**. Specifically, the Statement of Claims alleges, in part:

**********
### III.
### FACTUAL BACKGROUND

> 4. Claimants are individual spouses and the owners of real property located at 97 Coleman Springs, Boerne, Texas 78006 (the "**Property**"). Respondent is a custom home builder. On or about May 5, 2017, Claimants and Respondent executed a Construction Contract for the construction of a new residence on the Property in exchange for total payment in the amount of $645,700.00 (the "**Contract**"). Claimants tendered full payment under the contract.
>
> 5. Claimants have discovered significant construction defects and resultant damage at the Property caused by Respondent. Specifically, the residence is suffering from poor

drainage, widespread water infiltration, and related issues causing water damages to the Property, and pervasive toxic mold growth. Despite receiving notice of these defects and resulting damages, Respondent has failed and/or refused to take appropriate action to remedy the defects.

6. In December 2021, Claimants retained Structural Engineers of Texas, PLLC ("**SEOT**") to investigate and report on the issues at the Property. (*See Attached SEOT Report – Exhibit A*). The investigation involved visual inspections of the Property and review of photographs captured during the construction phase to determine the cause of concerns discussed within the report, including mold, leaking windows, cracked stucco, sticking doors, and poor drainage. After observing widespread water damage and other construction defects, SEOT issued opinions and recommendations such as the following:

> It is the professional opinion of SEOT Engineering, PLLC that all of the concerns discussed herein, including mold, leaking windows, cracked stucco, sticking doors, and poor drainage along the front, are the direct result of inadequate construction methods, the General Contractors' failure to adhere to the project specifications and an apparent lack of care and field supervision.
>
> The cracked stucco observed occurring in the rear patio beam was caused by excessive beam deflection. It is the professional opinion of SEOT Engineering that the subject beam was under designed.
>
> The mold occurring within the Music Room (aka Basement area) is the direct result of the General Contractors' failure to adhere to the provisions specified in the construction documents. These include the installation of drainage provisions behind the deep perimeter grade beams and failure to install the moisture proof membrane to the exterior face of concrete.
>
> The excessive cracking conditions observed in the exposed concrete surfaces below the wood deck and in walls surrounding the music room are the result of poor construction practices and/or inadequate skin reinforcing or shrinkage reinforcing.

7. Claimants also retained Centex Environmental ("**Centex**") to perform a Mold Inspection and Assessment to determine the existence of fungal growth in the residence and the cause thereof (*See Attached Centex Environmental Report – Exhibit B*). Centex took four air samples throughout the residence, one in each of the following: bathroom cabinet downstairs, basement area, exterior wall cavity by a window with evidence of leaking, and kitchen area on main level. Test results for the first two samples showed extremely high levels of penicillium/aspergillus and the other two samples showed high levels of penicillium/aspergillus. Based on Centex's visual inspection and test results, Centex concluded that the cause of mold is from an improperly waterproofed foundation or bad stucco.

8. Claimants further retained Parker Engineering, LLC ("**PE**") to perform an investigation into whether Respondent installed the foundational drain pipe in accordance with the foundation plans for the residence and whether the same was

functioning properly (*See Attached Parker Engineering Report – Exhibit C*). At PE's direction, Foundation Support Specialists excavated along the edged of the grade beam where the outfall for the drain pipe should have fell according to the foundation plans. PE observed that there was no rock cut for the drain or any sleeves in the wall to accommodate the drain pipe. Accordingly, PE confirmed that Respondent failed to install a working drain as specified in the foundation plans.

9.     Claimant formally served a Notice of Residential Construction Defects to Respondent on February 2, 2022, pursuant to CHAPTER 27 of the TEXAS PROPERTY CODE. Throughout the CHAPTER 27 process, Claimants provided all of the attached expert reports and coordinated several site visits. Respondent failed and/or refused to make a reasonable offer of settlement pursuant to the CHAPTER 27 process.

. . .

12.    Claimants and Respondent entered into a legally binding agreement, referred to above as the Contract. Claimants have fully and/or substantially performed all of their obligations under the Contract. Despite that, Respondent is in breach of the Contract by performing defective work, failing to replace damaged elements at the Property, and failing to evaluate and repair the source of water intrusion, structural failures, and related damages on the Property, pursuant to the Contract and the applicable warranties.

. . .

15.    Claimants have claims which have matured against Respondent and that are herein brought under Section 17.01, et seq., of the TEXAS BUSINESS & COMMERCE CODE, also known as the Deceptive Trade Practices Act (the "**DTPA**"). Claimants are "consumers" as that term is defined in the DTPA and Respondent is subject to liability thereunder. Respondent committed deceptive and unconscionable conduct, including: (1) misrepresenting that the quality of the work that would be performed at the Property; (2) failing to disclose certain information regarding the quality of construction work and materials used at the Property; (3) misrepresenting the quality and characteristics of its work; and/or (4) breaching express and implied warranties for its work.

16.    Claimants relied upon these representations to their detriment.

17.    The conduct of Respondent, as hereinabove stated, was committed knowingly and intentionally and caused Claimants to suffer the damages set forth herein. Respondent was actually aware, at the time of the conduct of the falsity, deception, and unfairness of the conduct about which Claimants complain. As a direct result of Respondent's knowing and intentional misconduct, Claimants suffered mental anguish. Accordingly, Respondent is liable to Plaintiff for mental anguish damages and additional damages of up to three times the amount of economic damages as permitted by the DTPA.

18.    Respondent's conduct as described in this claim and the resulting damages and loss to Claimants have also necessitated Claimants' retention of counsel and Claimants are therefore, entitled to recover from Respondent an additional sum to compensate Claimants for reasonable attorneys' fees for necessary services in the preparation, prosecution and appeal if necessary, of this action, as permitted by DTPA.

. . .

20. Respondent was under a legal duty to construct and deliver the Property in a manner that was free from defects and was inhabitable and safe. Specifically, Respondent was at all times under a duty imposed by the laws of Texas governing builders and contractors; (1) to hold all state mandated required licenses; (2) to perform the work in a good and workmanlike manner; (3) to exercise a degree of care commensurate with the knowledge and skill required of ordinarily prudent members of its profession; (4) to use the proper materials and workers; (5) to repair in a good and workmanlike manner; and (6) to obey all applicable laws, building codes, and statutes.

21. Respondent breached its duty of care and acted negligently, as set forth herein. Specifically, Respondent violated its duty by failing to use reasonable care in constructing the house, failing to construct the house in accordance with the construction plans, failing to adhere to applicable building codes, allowing moisture to penetrate and remain in the structure or parts of the structure of the house, thereby causing physical damages to the Property. Respondent's failure to practice good and acceptable building standards constituted negligence and was a direct and proximate cause of the damages sustained by Claimants. Claimants have sustained economic damages by the home requiring substantial repairs, the value of the home being dramatically reduced, and the home being uninhabitable, among other damages set forth herein.

. . .

24. Respondent expressly and impliedly warranted that it would properly perform all required work at the Property in accordance with Claimants' instructions/requests, the plans and specifications for the Project, installation guidelines and recommendations, generally accepted practices in the industry, and any codes and regulations governing Respondent's work. As set forth herein, Respondent failed to properly perform its work at the Property. Respondent's failure is a breach of its express and implied warranties given to Claimants and/or the implied warranties of good and workmanlike performance in that the house was not constructed within the acceptable industry standards of good quality and good workmanship, substantial damages to the home have resulted, and the house is not safe and habitable due to the defective construction by Respondent. Claimants have been and will continue to be injured by Respondent's breaches as set forth herein. Respondent's breaches are the direct and sole cause of Claimants' injuries. Claimants would further show that under this theory of recovery, they are entitled to recover all costs and expenses incurred as a result of Respondent's breaches, as well as their reasonable attorneys' fees, expert fees, costs, and pre-judgment interest at the highest rate allowed by law.

**********

**Exhibit A, attached hereto.**

**IV.**
**INSURANCE PROVISIONS MADE THE BASIS OF THIS ACTION**

8. CSU issued a Commercial General Liability Policy, bearing policy number

**CSU0149991**, to AMCH for the period May 2, 2020 to May 2, 2021, which was subsequently renewed on an annual basis until May 2, 2023 (the "Policy"). A certified, redacted copy of the Policy is attached hereto as **Exhibit B**.

9. Some of the terms and conditions of the Policy having relevance to the instant case, are as follows:

**********

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

. . .

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

. . .

    c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        **(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    **e.**    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

. . .

**Exhibit B, attached hereto.**

**********

**SECTION V – DEFINITIONS**

. . .

**4.**    "Coverage territory" means:

    a.    The United State of America …

. . .

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**17.**    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

. . .

**Exhibit B.**

**********

10.    By endorsement CSGA 401 02 13 Form, the Policy is modified to include the following exclusion:

**********

## EXCLUSION – PRIOR INJURY OR DAMAGE

A. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage:**

This insurance does not apply to any "bodily injury" or "property damage" that:

1. first occurred prior to the Effective date of this Coverage Part;

2. is alleged to be in the process of occurring as of the Effective date of this Coverage Part; or

3. is in the process of settlement, adjustment or "suit".

This exclusion applies to all continuing injury or damage:

1. arising from the same or similar cause, including continuous or repeated exposure to substantially the same general harmful conditions; or

2. at the same or adjacent location; or

3. from the same or similar work; or

4. from the same product or service.

B. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal and Advertising Injury:**

1. was first committed prior to the Effective date of this Coverage Part;

1. is alleged to be in the process of being committed as of the Effective date of this Coverage Part;

3. is in the process of settlement, adjustment or "suit".

This exclusion applies to all continuing injury or damage:

1. arising from the same or similar cause, including continuous or repeated exposure to substantially the same general harmful conditions; or

2. at the same or adjacent location; or

3. from the same or similar work; or

4. from the same product or service.

. . .

**********

**Exhibit B.**

## V.
## BASIS FOR DECLARATORY RELIEF

11. CSU seeks a declaration from the Court that the Policy's Prior Injury or Damage Exclusion precludes CSU's duty to defend and duty (if any) to indemnify AMCH in the Underlying Arbitration. CSU seeks this declaration as there is no coverage for the damages sought against AMCH in the Arbitration, as the loss to the Property began prior to the Policy's inception. CSU further seeks this declaration as there is no coverage for the damages sought in the Arbitration as the loss was known and/or in progress at the time of the Policy's inception. These reasons equally negate CSU's duty to defend and duty to indemnify AMCH, pursuant to the unambiguous Policy terms.

## VI.
## CONCLUSION

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Cincinnati Specialty Underwriters Insurance Company prays for judgment as follows:

(1) A judgment declaring that the Policy provides no duty to indemnify AMCH for the damages being sought in the Underlying Arbitration;

(2) A judgement declaring that the Policy provides no duty to defend AMCH in the Underlying Arbitration; and

(3) A judgment for such other and further relief, general or specific, legal or equitable, to which Cincinnati Specialty Underwriters Insurance Company may show itself to be justly entitled.

Respectfully submitted,

COX P.L.L.C.

By: */s/ Mariam Shakir*
Mariam Shakir
State Bar No. 24108826
mshakir@coxpllc.com

Lisa Brindle Talbot
State Bar No. 24040576
ltalbot@coxpllc.com
Jennifer Kelley
State Bar No. 24058695
jkelley@coxpllc.com
8144 Walnut Hill Lane, Suite 1090
Dallas, Texas 75231
(817) 422-7096
(202) 262-2835
(469) 928-0090
(469) 340-1884 fax

ATTORNEYS FOR PLAINTIFF
THE CINCINNATI SPECIALTY
UNDERWRITERS INSURANCE COMPANY